IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 10-00224-01-CR-W-DW |
| CHARLES M. CHIVERS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION TO DENY
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is defendant's motion to suppress evidence seized on May 24, 2010. I find that officers observed a gun in plain view, and thereafter recovered the evidence from defendant's vehicle pursuant to a lawful inventory search. Therefore, defendant's motion to suppress should be denied.

### I. BACKGROUND

On May 24, 2010, officers stopped defendant based on a domestic disturbance report wherein defendant was alleged to have threatened a female with a handgun. He refused to consent to a search of his car. An officer shined a flashlight into the car and observed a gun in a map pocket. Defendant, whom police knew was a felon, was placed under arrest. An inventory search was conducted and police discovered a magazine in another map pocket.

On August 10, 2010, an indictment was returned charging defendant with one count of possessing a firearm on May 24, 2010, after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A superseding indictment was returned on January 11, 2012, adding a count of possessing ammunition on January 26, 2010, after having been convicted of a felony.

On January 13, 2012, defendant filed the instant motion to suppress (document number 53). Defendant concedes that the stop of his vehicle was valid (see p. 5 of defendant's

motion). Defendant argues that the gun in his car "was not immediately apparent, or apparent at all." Defendant reasons that it was 3:30 in the morning, the Blazer had tinted windows, there were no street lights near the Blazer at the time, and "even with a flashlight, the gun would not have been able to be seen at all from its position in the map pocket."

On January 20, 2012, the government filed a response (document number 57) arguing that two officers were able to see the gun in plain view.

On January 30, 2012, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorney Bruce Clark. The defendant was present, represented by Steven Willibey. The following witnesses testified:

    1.    Officer Joshua Kreigh, Raytown, Missouri, Police Department

    2.    Officer Shawn Didde, Raytown, Missouri, Police Department

In addition, the following exhibits were admitted:

| | | |
|---|---|---|
| P. Ex. 1 | Photograph of the information card |
| P. Ex. 2 | Photograph of rear of Blazer |
| P. Ex. 3 | Photograph of side of Blazer |
| P. Ex. 4 | Photograph of back seat, passenger side |
| P. Ex. 5 | Photograph of gun in map pouch |
| P. Ex. 6 | Photograph of gun with map pouch flap pulled out |
| P. Ex. 7 | Photograph of gun |
| P. Ex. 8 | Photograph of magazine in map pouch |
| P. Ex. 9 | Photograph of magazine |

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. At approximately 3:20 a.m., on March 24, 2010, officers were dispatched to a residence at 10809 66th Terrace in Raytown, Missouri, on a report of a disturbance (Tr. at 3-4). Officer Joshua Kreigh was heading toward the residence when he heard a report that the male party, who had threatened a female with a handgun, was leaving the residence in a blue Chevrolet Blazer (Tr. at 4-5, 15, 31).

2. Officer Kreigh was heading east on 67th Street when he saw a blue Blazer heading toward him, driving south on Willow (Tr. at 5, 14). This was a few blocks from the residence where the disturbance was first reported (Tr. at 5). Since it was 3:20 a.m., there was no other traffic out (Tr. at 5). Officer Kreigh turned and began following the Blazer and notified dispatch that he had located it (Tr. at 5-6). He intended to stop the Blazer and ask the driver about the disturbance at the residence he had just left (Tr. at 14). Officers had not yet arrived at the residence to determine what had happened there (Tr. at 14).

3. Officer Shawn Didde was advised by his sergeant that the male suspect was a convicted felon (Tr. at 32). He heard from Dispatch that Officer Kreigh was following the Blazer, so he turned around and went to Officer Kreigh's location to assist him (Tr. at 32, 36). Once Officer Didde caught up with Officer Kreigh, the two officers stopped the Blazer just south of 67th and Raytown Road (Tr. at 6, 32).

4. Officer Kreigh identified himself and asked defendant to step out of the Blazer (Tr. at 6). Officer Didde was standing on the passenger side of defendant's car, which is standard procedure during a car stop (Tr. at 6, 16, 32). Defendant got out of the car, and Officer Kreigh checked him for weapons and then took him to the back of the Blazer to talk about what had happened at the residence (Tr. at 6-7, 16). Defendant was not handcuffed (Tr. at 7).

3

5. Officer Kreigh asked defendant if he had any weapons on him or in the car, and defendant said he did not (Tr. at 7). Officer Kreigh asked for permission to search the car, and defendant declined (Tr. at 7). Officer Kreigh continued talking to defendant while Officer Didde walked around the Blazer, checking to see what he could see in plain view while shining his flashlight inside the car (Tr. at 7-8, 32). Officer Didde was able to see inside the vehicle when he shined his flashlight through the windows (Tr. at 33, 34). He observed the top of a magazine well in the map pouch of the front passenger's seat (Tr. at 33). Officer Didde came to the back of the car and said, "FIP" to Officer Kreigh, which means "felon in possession" (Tr. at 8, 34). Officer Kreigh told defendant he was not under arrest yet, but that he was going to be put in handcuffs for officer safety (Tr. at 8, 17, 34). Defendant was then placed in the patrol car (Tr. at 8).

6. Officer Kreigh went to the rear passenger door of the Blazer, shined his light in the door, and saw a firearm in the map pocket on the back of the front passenger's seat (Tr. at 10, 18). He was able to see the gun while the door was closed; no one opened a door of the Blazer until after it was determined that defendant would be arrested and the Blazer would be towed (Tr. at 10, 37). All of the windows were rolled up except the driver's window (Tr. at 18).

7. Sergeant Anderson, who had been at the residence, came to the scene where defendant was detained and discussed with the officers what should be done (Tr. at 10, 11, 20, 35). Defendant was eventually arrested and, with no other occupants in the vehicle, it was towed (Tr. at 11). An inventory search was performed by Officer Kreigh who recovered the handgun, and he also found a magazine in the map pocket behind the driver's seat (Tr. at 12).

4

8. Officer Didde was able to see the handgun more clearly in person and with his flashlight than the pictures depict because his view was three dimensional (Tr. at 34).

### III. PLAIN VIEW

Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions. United States v. Williams, 616 F.3d 760, 764 (8th Cir. 2010). The government bears the burden of establishing that an exception to the warrant requirement applies. Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971).

The plain-view exception to the Fourth Amendment's prohibition against unreasonable searches and seizures "'allows a police officer to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself.'" United States v. Abumayyaleh, 530 F.3d 641, 648-49 (8th Cir. 2008) (quoting United States v. Hughes, 940 F.2d 1125, 1126-27 (8th Cir. 1991)). "Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle." United States v. Bynum, 508 F.3d 1134, 1137 (8th Cir. 2007).

In this case, the officers did not violate the Fourth Amendment in approaching the Blazer -- defendant concedes that the vehicle stop was lawful. The incriminating character of the gun was immediately apparent to the officers since they had been informed prior to the stop that defendant had a prior felony conviction. Once the officers saw the gun, they had probable cause to arrest defendant for possessing a firearm after having been convicted of a felony.

5

The Supreme Court has recognized an exception to the warrant requirement for searching a vehicle lawfully impounded by law enforcement officers. Cady v. Dombrowski, 413 U.S. 433, 446-48 (1973). "Impoundment of a vehicle for the safety of the property and the public is a valid 'community caretaking' function of the police," which does not require a warrant. United States v. Petty, 367 F.3d 1009, 1011-12 (8th Cir. 2004) (quoting Cady v. Dombrowski, 413 U.S. at 441).

The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy --even a policy that provides officers with discretion as to the proper course of action to take -- and the decision is made "on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987). These parameters are designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." United States v. Petty, 367 F.3d at 1012 (internal quotation omitted).

Law enforcement may search a lawfully impounded vehicle to inventory its contents without obtaining a warrant. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976); United States v. Pappas, 452 F.3d 767, 771 (8th Cir. 2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search."). The reasonableness of an inventory search is determined based upon the totality of the circumstances. United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005). Those circumstances include whether the search was conducted according to standardized procedures. South Dakota v. Opperman, 428 U.S. at 376.

When the driver of a car is arrested, the police may impound the vehicle and conduct an inventory search. United States v. Stephens, 350 F.3d 778 (8th Cir. 2003); United States v. Navarrete-Barron, 192 F.3d 786, 791-92 (8th Cir. 1999). During the inventory search, police

6

recovered the gun that was seen through the window, and they found and recovered a magazine.

Defendant's only argument is that he does not believe the officers were able to see the gun through the window with only the aid of a flashlight. However, the uncontroverted evidence is that they did. There is no evidence that the officers opened the car door prior to placing defendant under arrest. There is no evidence by any other person indicating that he or she looked through the window and was unable to see the gun. Defendant's argument is a factual argument; and as there is no evidence contradicting the testimony of the officers, his argument fails.

## IV.  CONCLUSION

Based on the above-stated findings of fact and the law as discussed in section III, I find that police lawfully stopped defendant, they were able to see the firearm in plain view, they knew defendant was a convicted felon and therefore had probable cause to arrest him, and they recovered the gun and the additional magazine during a lawful inventory search. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 10, 2012

7